FOR PUBLICATION

E-FILED
CNMI SUPERIOR COURT
E-filed: Mar 21 2007 4:24PM
Clerk Review: N/A
Filing ID: 14198182
Case Number: 04-0288-CV
N/A

IN THE SUPERIOR COURT

OF THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ALVIN OWENS,<br><br>    Plaintiff,<br><br>vs.<br><br>BERNADETTE SACCOMANNO, ET AL.,<br><br>    Defendants. | Civil Action No. 04-0288E<br><br>ORDER GRANTING DEFENDANT DR. J. DAVID SOUTHCOTT'S MOTION TO DISMISS |

## I. INTRODUCTION

THIS MATTER came for hearing on September 21, 2006 at 1:30 p.m. to hear a Motion to Dismiss on shortened time filed by Defendants. Assistant Attorneys General Dana Emery, Gregory Baka, and David Lochabay, appeared on behalf of Defendants Dr. J. David Southcott, Dr. Bernadette Saccomano, and Commonwealth Health Center (CHC), respectively. Counsel George Hasselback appeared on behalf of Plaintiff Alvin Owens. At the hearing, Plaintiff challenged the Attorney General's certification that Dr. Southcott was acting within the scope of his employment under CHC at the time the events giving rise to the above-captioned action arose.

The Court took Defendant Dr. Southcott's motion to dismiss the complaint against him pursuant to P.L. 15-22 under advisement. The Court then issued an opinion which invited Plaintiff to challenge

DEFENDANT EXHIBIT 3

the Attorney General's certification and set out the procedural guidelines for initiating such a challenge. In accordance with the procedures laid out in its October 5, 2006 opinion, the Court instructed the parties to submit statements of undisputed and disputed material facts with regard to whether Dr. Southcott was acting within the scope of his employment for CHC at the time the events giving rise to this complaint occurred in order to assess the validity of the Attorney General's certification. Each party submitted self-styled statements of facts and arguments to the Court addressing whether Dr. Southcott was acting within the scope of his employment at the time the events giving rise to this action occurred. The Court called the parties for a status conference on March 12, 2007, and issued a tentative ruling that found Plaintiffs failed to demonstrate that any facts existed which challenged the Attorney General's certification, and that the complaint against Dr. Southcott should be dismissed pursuant to 15-22. The discussion below explains the Court's reasoning behind its March 12, 2006 ruling.

## II. DISCUSSION

This Court has previously found that although Public Law 15-22 does not specifically provide for Judicial Review of Attorney General certifications, the Commonwealth acknowledges that the law is fashioned closely after amended portions of the Federal Tort Claims Act, and therefore, found that certifications by the Attorney General are subject to review by the trial court. *Gutierrez de Martinez v. Dirk A. Lamagno*, 515 U.S. 417, 115 S. Ct. 2227, 132 L.Ed.2d 375 (1995). Accordingly, the Court adopted the review procedure employed by federal courts:

> The Attorney General's certification is subject to de novo review in the trial court. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993); *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991). The trial court should apply respondeat superior principles of state law when reviewing the certification. *McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001); *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996). The party seeking review of the certification bears the initial burden of proof and must present evidence sufficient to disprove certification by a preponderance of the evidence. *Green*, 8 F.3d at 698. The Attorney General's certification is prima facie evidence that the employee was acting within the scope of his employment. *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995). The trial court is authorized, but not required, to hold a hearing to resolve disputed factual issues. *Pellitier v. Federal Home Loan Bank*, 968 F.2d 865, 874 (9th Cir. 1992) (citing

*Meridian*, 939 F.2d at 745). *See also McLachlan*, 261 F.3d at 910-11. A hearing should not be held where the certification, pleadings, affidavits, and any supporting documentary evidence do not reveal any disputed issues of material fact as to scope of employment. *Gutierrez de Martinez v. Drug Enforcement Administration*, 111 F.3d 1148, 1155 (4th Cir. 1997) (*Sub nom Gutierrez de Martinez v. Dirk A. Lamagno, supra*, in the Supreme Court). Defendant's Memorandum of Law in Support of Motion to Dismiss Defendant J. David Southcott under Public Law 15-22, p. 5.

Plaintiff in opposing the Attorney General's certification has relied primarily on a legal argument that Dr. Southcott's certification was defective because Dr. Southcott resembled an independent contractor rather than an employee. In so stating, Plaintiff relies on federal circuit court precedent interpreting the independent contractor exception to Federal Tort Claims Act's (FTCA) waiver of sovereign immunity. However, as stated above and in this Court's previous opinion, PL 15-22 was based on the Federal Employees' Liability Reform and Tort Compensation Act of 1988 [FELRTCA], or the "Westfall Act". Consequently, it appears that the central issue should be confined to whether or not Plaintiff has presented sufficient evidence to rebut the presumption that Dr. Southcott was acting within the scope of his employment based on respondeat superior principles.

Notwithstanding this distinction, the Court appreciates the obvious prerequisite that in order for respondeat superior principles to apply, there must be established some kind of master-servant/employer-employee relationship. Therefore, the Court will examine first whether Dr. Southcott's relationship with CHC was that of employee or independent contractor, and then, if Dr. Southcott is deemed an employee, whether Plaintiff has presented sufficient evidence to show that Dr. Southcott's actions fell outside the scope of his employment such that it merits any further hearing on the matter.

**A. Dr. Southcott was an Employee of CHC at the Time of the Events Giving Rise to the Current Action**

As argued by Defendants, our Supreme Court has identified several non-exclusive factors which

3

aid in determining whether a person serves in the capacity as a servant (or employee) or an independent contractor:

>   (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>   (b) whether or not the one employed is engaged in a distinct occupation or business;
>   (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without a supervision;
>   (d) the skill required under the particular occupation;
>   (e) whether the employer of the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>   (f) the length of time for which the person is employed;
>   (g) the method of payment; whether by time or by the job;
>   (h) whether or not the work is part of the regular business of the employer;
>   (i) whether or not the parties believe they are creating the relation of master and servant; and
>   (j) whether the principal is or is not a business.

*Castro v. Hotel Nikko Saipan, Inc.*, 4 N.M.I. 268, 273 (1995), quoting *Community for Creative Non-violence v. Reid*, 490 U.S. 730, 750-51, n. 31, 109 S.Ct. 2166, 2178-79, 2179 n.31, 104 L.Ed.2d 811, 831-832, 832 n. 31 (1989).

Plaintiff, cites federal case law, specific to the interpretation of the FTCA exception to the federal waiver of sovereign immunity, particularly with respect to whether a medical professional qualified as an employee or a subcontractor, which mirrors the Supreme Court factors enumerated above. *See Garcia v. Reed*, 227 F.Supp.2d 1183 (Dist. Ct. NM, 2002), *Duplan v. Harper*, 188 F.3d 1195 (10th Cir.,1999), *Robb v. U.S.*, 80 F.3d 884 (4th Cir., 1996), *Bernie v. U.S.*, 712 F.2d 1271 (8th Cir., 1983) and *Linkous v. U.S.*,142 F.3d 271 (5th Cir., 1998). These cases list several non-exclusive factors which weigh on the determination of the relation between the medical professionals and the government entity hiring them. Consistent among the factors examined in the above-cited cases were (1) whether the hired party expressly "accepted assignment as an independent contractor" or an employee; *Garcia*, 227 F.Supp.2d 1183, *Robb*, 80 F.3d 884, *Duplan* 188 F.3d 1195; (2) whether the hired party was required to provide his/her own liability coverage; *Id*; (3) whether the professional hired was responsible for providing his/her own equipment; *Id*; (4) whether " the Government supervises the day-to-day operations of the individual", *Id*

//

In claiming that Dr. Southcott was an independent contractor, Plaintiff relies on the undisputed language of Dr. Southcott's contract that Dr. Southcott was exempted from the Fair Labor Standards Act of 1936; that Dr. Sothcott was hired for a short period of time (30 days); that Dr. Southcott was hired to cover a specific shortfall in doctors; that Dr. Southcott failed to acquire annual or sick leave during the term of his contract; that Dr. Southcott was not entitled to administrative leave with pay; that Dr. Southcott was a highly skilled and educated individual; that Dr. Southcott was performing a highly skilled and specialized task as radiologist. Notwithstanding Plaintiff's accurate assertions made *supra*, Plaintiff has failed to persuasively demonstrate that Dr. Southcott was an independent contractor rather than an employee of CHC.

First, the actual contract giving rise to Dr. Southcott's employment relationship with CHC *expressly* labels Dr. Southcott as an employee and CHC as Dr. Southcott's employer and the Court, in presuming that the contract, as written, expresses the intent of the parties, must give it proper effect. As cited above, the federal courts have given substantial weight to the characterization of an employment relationship by the express terms of the contract giving rise to the relationship. *See Garcia*, 227 F.Supp.2d 1183, Robb, 80 F.3d 884, Duplan 188 F.3d 1195. In addition, though, the term of employment specified in Dr. Southcott's Excepted Service Employment Contract is short, it is nevertheless distinguishable from a contract hiring an independent contractor because it compensated Dr. Southcott on the basis of an annual salary rather than a payment per services agreement. The Court therefore accords little weight to the agreed length of the employment for the purposes of distinguishing an employment contract from a contract for hiring an independent contract.

Secondly, although the employment contract failed to provide Dr. Southcott of some benefits typically provided for certain Commonwealth employees, e.g. coverage under FLSA, annual leave, sick leave, and administrative leave, such omissions are not so unique as to conclusively indicate that Dr. Southcott was not retained as an employee. Moreover, Dr. Southcott was entitled to benefits typically

1　granted to CNMI employees such as worker's compensation coverage, and the availability of CNMI
2　Group Health and Life Insurance coverage. As argued by Defendants, Dr. Southcott under his
3　Excepted Service Employment Contract was covered by the now-repealed PELDIA, and thus was not
4　required to obtain malpractice coverage through MDA.

5　　　Thirdly, though Plaintiff plainly states that Dr. Southcott is a highly skilled and educated
6　individual who was hired to perform highly skilled and specialized tasks as a radiologist, Plaintiff offers
7　no evidence that CHC did not exercise supervisory authority over Dr. Southcott's performance of his
8　daily operations. Because it is the burden of the party challenging the Attorney General's certification
9　to demonstrate a disputed issue of fact in order to warrant further hearing, Plaintiff's mere statement that
10　Dr. Southcott was highly skilled and qualified, and that Dr. Southcott was employed to perform highly
11　skilled tasks is insufficient to create an issue of whether CHC had supervisory authority over Dr.
12　Southcott's performance of his duties.

13　　　In short, Plaintiff has failed to demonstrate by a preponderance of the evidence that Dr.
14　Southcott's actual relationship with CHC controverted the express language of his Excepted Service
15　Employment Contract, which expressed the intent and the belief of the parties that they entered into an
16　employment agreement and a master-servant relationship. While the Court is not unsympathetic to
17　Plaintiff's frustration over the difficulties of proving such in light of its inability to discover additional
18　evidence to contradict the express nature of Dr. Southcott's agreement, it is unable to identify any well-
19　grounded legal argument which mandate any further hearing on the matter. Consequently, the Court
20　will move on to the question of whether Plaintiff has proven by a preponderance of the evidence that Dr.
21　Southcott acted outside the scope of his employment at the time the events giving rise to this action
22　occurred.
23　//
24　//
25　//

//

**B. Plaintiff Has Failed to Rebut the Presumption that Dr. Southcott was Acting Within the Scope of His Employment by a Preponderance of the Evidence**

Consistent with this Court's adopted procedural framework for contesting an Attorney General's certification that an employee was acting within the scope of his/her employment, the Court will apply the principles of respondeat superior to determine whether such certification was in error. *McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001). Specifically, *McLachlan*, distills the determination of whether an employee acted within the scope of employment to whether the actions of the employee were *foreseeable* in light of his/her employment, and has interpreted such "broadly":

> Foreseeability suffices for conduct to be within the scope if it "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." No "nice inquiry" is made as to whether the employee was engaged in the ultimate object of his employment where he combines his personal business with his employer's, unless it is clear that "neither directly nor indirectly could he have been serving his employer." Even "willful and malicious torts of an employee" can be within the scope of his employment, and that may be so even where the employee's torts violate the employer's express rules and confer no benefit on the employer. Thus, for example, torts have been found to be within the scope of employment where an employed truck driver beat a motorist with a wrench, a traveling salesman beat a motorist with whom he had a near-accident, and a contractor's employee threw a hammer at a subcontractor. . . .
>
> . . .
>
> Under the broad California doctrine, the conduct of all three defendants was within the scope of their employment. All three acted foreseeably, in the sense that their conduct was "not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." There is unfortunately nothing "unusual or startling" about personal hostility, backbiting, resentment of another's success, false rumors, and malicious gossip in the workplace.

*Id* (citations omitted).

Here, Plaintiff has failed to present any evidence suggesting that Dr. Southcott's conduct was so "unusual or startling" that it would be unforeseeable to an employer. Plaintiff alleges in his complaint that Dr. Southcott was negligent in diagnosing Plaintiff's x-rays. Dr. Southcott's alleged actions or

7

1  omissions which give rise to Plaintiff's claims are foreseeable in the scope of his employment as he was
2  hired as a radiologist in order to, among other things, examine and analyze the x-rays of patients. It is
3  therefore, not unusual or startling that mistakes in analysis and diagnosis would occur as a doctor is
4  acting within the scope of his/her employment.

**C. Absent a Valid Challenge to the Attorney General's Certification, the Court is Compelled to Dismiss Dr. Southcott from Plaintiff's Complaint Pursuant to PL 15-22**

Defendant's Motion to Dismiss is grounded in Com. R. Civ. 12(b)(6), which allows for the dismissal of claims for which the recognized law provides no relief. A motion to dismiss is therefore solely aimed at attacking the pleadings.

Since Com. R. Civ. P. 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," there is "a powerful presumption against rejecting pleadings for failure to state a claim." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985). Consequently, a motion to dismiss for failure to state a claim upon which relief can be granted will succeed only if from the complaint it appears beyond doubt that plaintiffs can prove *no* set of facts in support of their claim that would entitle them to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (*emphasis added*). The burden is upon the movants to establish beyond doubt that the Plaintiff's action is one upon which the law recognizes no relief. . All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. The Court in examining the pleadings will assume all *well-plead* facts are true and draw reasonable inferences to determine whether they support a legitimate cause of action. See *Cepeda v. Hefner*, 3 N.M.I. 121, 127-78 (1992); *In re Adoption of Magofna*, 1 N.M.I. 449, 454 (1990); *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). In reviewing the sufficiency of the complaint, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). "[I]t may appear on the face of the

pleadings that recovery is very remote and unlikely but that is not the test." *Id*.

//

Public Law 15-22 repeals the Public Employee Legal Defense and Indemnification Act (PELDIA) codified as 7 CMC §§ 2301-07 in its entirety. Public Law 15-22 also mandates the dismissal of Commonwealth employees from negligence lawsuits upon certification by the Attorney General to the Court that the Commonwealth Employees were acting within the scope of their employment when the acts or omissions complained of in the lawsuit occurred. After certification and dismissal, the CNMI is substituted as Defendant, if not already named, in the employee's place.

Here, Plaintiff's complaint alleges ordinary negligence against all Defendants. Dr. Southcott has provided certification from the Attorney General he was acting within the scope of his employment as a physician at CHC at the time of the incident giving rise to the claims of Plaintiffs in this action. Plaintiff failed to adequately contest the validity of such certification and the Court finds no patent reason to question its validity. Consequently, in accordance with the law set forth in PL 15-22, Dr. Southcott's request for dismissal from Plaintiff's negligence cause of action is **GRANTED**.

## II. CONCLUSION

For the foregoing reasons, Defendant Dr. J. David Southcott's Motion to Dismiss is **GRANTED**.

**SO ORDERED this 21st day of March, 2007.**

/s/
David A. Wiseman, Associate Judge

9